# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF MASSACHUSETTS

JAMES A. DOOLING, III,
     Plaintiff,


v.                                  CIVIL ACTION NO. 13-11844-MPK[1]


JAMES B. NUTTER & CO., INC., and
FEDERAL NATIONAL
MORTGAGE ASSOC.,
     Defendants.


### MEMORANDUM AND ORDER ON
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (#37).


KELLEY, U.S.M.J.

## I. Introduction

On October 24, 2012, Plaintiff, James A. Dooling, acting *pro se*, filed an action against

Defendant James B. Nutter & Co., Inc. ("Defendant Nutter") in the Northeast Housing Court, Salem

Division, for the alleged wrongful destruction of his property.[2]  Plaintiff subsequently engaged

counsel and filed an amended complaint with the Housing Court on July 22, 2013.  The amended

complaint added an additional defendant, Federal National Mortgage Association ("Defendant

Fannie Mae"), and challenged the propriety of Defendants' actions with regard to foreclosure

proceedings. (#1 ¶¶ 1-2.)  The case was removed to the United States District Court for the District

---

[1]

    With the parties' consent, this case was reassigned to the undersigned for all purposes, including trial and the
entry of judgment, pursuant to 28 U.S.C. § 636(c). (#56.)

[2]

    Defendant Nutter foreclosed on Plaintiff's home, 32 Roundy Street Beverly, Massachusetts ("Roundy
Property"). As a result of the foreclosure sale and transfer of title, Plaintiff's belongings, located in the residence, were
discarded. (*See* #1 at 1-4.)

of Massachusetts on August 2, 2013. (#1 ¶ 4.)[3]  Plaintiff moved for summary judgment on Counts

I and II of the Amended Complaint. (#9.)  The District Court, in an electronic order (#19), denied

Plaintiff's motion for summary judgment. On June 3, 2015, Defendants moved for summary

judgment on all counts (#37)[4] and Plaintiff filed an opposition. (##43, 44.)[5]  The motions have been

fully briefed and a hearing has been held.   At this juncture, the record is complete and the motion

stands ready for decision.[6]

---

[3]

    Plaintiff's amended complaint, as docketed, is missing page 6. (See #1-1 at 7-8.) Plaintiff included a fully
paginated version of his amended complaint attached as Exh. A to his motion for summary judgment. (See #10, Exh. A.)
The fully paginated version is missing a portion of text on page 2 of the amended complaint. (#10 at 4.) However, by
referring to both documents, one may examine a complete version of the amended complaint. For the sake of citation
throughout this Report and Recommendation, the Court will refer to the #10, Exh. A. version of the amended complaint,
as it is the more complete version.

[4]

    Defendants originally moved for summary judgment on September 24, 2014 (#25); Plaintiff responded in
opposition (## 27-29); and Defendants replied (# 30.)  A hearing on the matter was scheduled for June 2, 2015. (#36.)
On the date of hearing, Defendants requested leave to submit a complete motion for summary judgment, as the
Defendants' original memorandum in support was only a draft. The original motion sought summary judgment on all
counts, but the memo in support addressed only Counts I and II. (See #26.) The Court held Defendants' motion for
summary judgment moot (#40), and granted Defendants leave to submit a new motion with a completed version of their
supporting  memorandum. As a result, the hearing was postponed to June 24, 2015.

[5]

    At the June 24, 2015 hearing, Defendants requested, and were given, time to respond to Plaintiff's opposition
and to submit a statement of material facts, as none had been submitted with their motion.  The Court provided a date
of July 6, 2015 for Defendants' submissions, and a date of July 8, 2015 for Plaintiff to determine if a reply to Defendants'
response was warranted.  Defendants submitted a second affidavit in support of their motion on July 2, 2015 (#48), but
never submitted a response to Plaintiff's opposition or a statement of material facts to support their motion for summary
judgment.  On July 14, 2015, Plaintiff submitted a sur-reply (#50) urging the Court to *sua sponte* find in his favor on
Counts I and II.

[6]

    Both parties take issue with the Court's ruling on Plaintiff's motion for partial summary judgment. Plaintiff
argues that *res judicata* bars Defendants' motion as it relates to Counts I and II because Judge O'Toole wrote in an
electronic order that "[t]here are genuine factual disputes material to the claims at issue that are properly resolved by a
trier of fact on a full evidentiary record."   (#19; # 44 at 1.)  What specific factual disputes Judge O'Toole found is
unknown.  In their memo in support of their second motion for summary judgment, Defendants state that they are seeking
"some clarification from the Court as to which of these two counts may still present a triable issue," yet conclude with
the argument that "Defendants are entitled to judgment as a matter of law on most, if not all, of the claims raised. . . .".
(#37-1 at 3, 12.)  Defendants' memo in support concludes with a statement that appears contradictory to their position:
"In the present case, the Borrower's motion seeks to bring the heart of the case to an early conclusion, but the evidence
and argument presented by the Plaintiff demonstrates that a trial is indeed warranted." (#37-1 at 3.)  Based on the entirety
of Defendants' memo in support, this appears to be the result of a careless author's recycling a portion of text from
another document.
    In any event, that there may be genuine issues of material fact when Plaintiff bears the burden of proof does
not mean that there necessarily are genuine issues of fact when the burden is on the Defendants.  Plaintiff's argument

## II. Facts[7]

The undisputed facts are as follows. Plaintiff, born in 1933, received a home equity conversion mortgage, commonly termed a reverse mortgage, from Defendant Nutter in the amount of $538,500.00 on May 9, 2008. (#10 ¶ 4.) Dooling had an existing mortgage and several judgments against him; after closing costs, $239,138.87 was advanced to him. (#10 ¶ 5.) According to the terms of the reverse mortgage, Plaintiff would receive monthly payments from Defendant Nutter, and, in exchange, Defendant Nutter would receive ownership of the Roundy Property upon completion of all payments or Plaintiff's death. (*See* #37-2.) On June 9, 2009, the City of Beverly condemned the Roundy Property. (#10 ¶ 13; #37-10.) Dooling stated, in a June 27, 2011 letter to Defendant Nutter (#37-5 at 2-7) (the "letter"), that, as a result of the condemnation of the Roundy Property, he suffered a heart attack and was eventually sent to the Lynn Shore Rest Home located at One Monument Square, Beverly, Massachusetts ("Monument Square"), where he had been residing up to the date this action was filed. (#10 ¶ 17; #37-5 at 4-7.) The letter was sent in response to a request by Defendant Nutter for verification of what address Plaintiff considered his permanent residence. (#37-5 at 1.) Dooling stated, in the letter, that the Roundy Property remained his permanent residence, despite his current stay at the Monument Square address. (#37-5 at 3-4.)

---

on claim preclusion is without merit. The Court will address all counts alleged in the amended complaint.

[7]

    In his opposition to Defendants' motion for summary judgment, Dooling argues that Defendants' memo in support violated Local Rule 56.1 by failing to include a concise statement of material facts of record with appropriate citation. (#44 at 4.) Local Rule 56.1 states, in relevant part, "Motions for summary judgment shall include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation. Failure to include such a statement constitutes grounds for denial of the motion." This issue was raised previously by Plaintiff in his opposition to Defendants' first motion for summary judgment. (*See* # 27 at 1; #28 at 14.) While Defendants' actions demonstrate a clear failure to follow a basic tenet of summary judgment practice, the Court is able to analyze and decide the issues at bar based on the undisputed facts as evidenced in the papers.

A little more than three months later, on October 4, 2011, Defendant Nutter sent a Notice of Intent to Foreclose on the Roundy Property (the "Notice") to Plaintiff. (#37-4.) The Notice was sent to the Roundy Property. *Id.* at 2. Dooling alleges that on May 31, 2012, he spoke with a Mr. Madden, an employee of Defendant Nutter, who promised Plaintiff that Defendant Nutter would give him until "at least" September 1, 2012 to try to resolve the condemnation issues before they foreclosed on the Roundy Property.[8] (#10 ¶ 49.) After sending the October 2011 Notice and posting notice in a local newspaper for three consecutive weeks,[9] Defendant Nutter eventually foreclosed on the Roundy Property and held an auction on July 2, 2012, where it purchased the property. (#37-6.) Defendant Nutter subsequently executed a foreclosure deed on July 17, 2012. *Id.*

On August 15, 2012, Defendant Nutter deeded the Roundy Property to Defendant Fannie Mae. (#37-7.) At some point after obtaining ownership of the property, Defendant Fannie Mae discarded all of the items found in the residence. (#10 ¶ 27.) Included in the items that were discarded were Dooling's belongings. (#10 ¶¶ 28-9.) On June 20, 2013, Plaintiff sent a Mass. Gen. Laws c. 93A demand letter in regard to the allegations within the amended complaint. (#10 ¶ 73.) Defendant Nutter responded with an offer of $4,000.00 to settle the claim. *Id.*

### III. Summary Judgment Standard

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Rojas-Ithier v. Sociedad*

---

[8] Plaintiff is inconsistent as to the date the phone call allegedly occurred. The amended complaint states that the call occurred in July of 2012 and on May 31, 2012. (#10 ¶¶ 18, 49.) Plaintiff's opposition recites the date as May of 2012, yet the statement of material fact attached to the opposition states the call occurred in "June or July 2011." (#44 at 10; #45 ¶ 12.) There is no reference to this conversation in Plaintiff's affidavit. (*See* #10 at 28.)

[9] Defendant Nutter posted notice on June 11, 18, and 25 of 2012. (*See* #37-6 at 4.)

*Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40, 42 (1st Cir. 2005) (internal quotations marks and citation omitted).  When considering a motion for summary judgment, "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003) (citations omitted). "Once the moving party avers the absence of genuine issues of material fact, the non-movant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." *Fontánez-Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 54-55 (1st Cir. 2006) (internal quotation marks and citation omitted).

In determining whether summary judgment is proper, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Clifford v. Barnhart*, 449 F.3d 276, 280 (1st Cir. 2006).  Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'"  *Scott v. Harris*, 550 F.3d 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (further internal quotation marks omitted)).

IV. <u>Discussion</u>

Defendants argue that Dooling has failed to present any issues of genuine material fact and therefore they are entitled to the entry of summary judgment in their favor.  It is Defendants' position that Plaintiff was properly noticed of the foreclosure, the foreclosure proceedings were proper, and that Defendant Fannie Mae was within its legal right when it discarded Plaintiff's possessions. (*See* #37.)

A. Breach of Statutory Condition (Count I)

Plaintiff alleges that Defendant Nutter failed to satisfy the requisite notice requirement, per Mass. Gen. Laws c. 183 § 21 and section 16[10] of the reverse mortgage agreement, because notice of foreclosure was sent to the Roundy Property and not to Plaintiff's then current address, Monument Square. (#10 ¶¶ 32-38.)  Dooling refers the Court to a correspondence via mail from Defendant Nutter to Plaintiff at the Monument Square address dated February 2, 2012. (#10 ¶ 34; #45-2 at 12.) It is Dooling's position that such correspondence put Defendant Nutter on notice that Monument Square was "his address." *Id.*  Plaintiff contends that, based on Defendant Nutter's mailing of information about the reverse mortgage to him at the Monument Square address, "one can only *infer* that the parties. . . designated Monument Square as his address." (#10 ¶ 34) (emphasis added). However, after examination of the applicable statutory and contractual provisions, as well as the relevant portion of record before the Court, it appears that Dooling misapplies the statute and over generalizes the language of the reverse mortgage.

---

[10] The amended complaint directs the Court to paragraph 22 of the mortgage, however, this section is inapplicable to the issue at bar. (*See* #10 ¶¶ 32-38; #37-2 at 8.) When questioned about this discrepancy at the hearing, Plaintiff confirmed his error and agreed with the Court's examination of the issue under paragraph 20 of the mortgage. Paragraph 20 requires the lender, exercising its rights under the power of sale provision, to provide sufficient notice as set forth in paragraph 16 of the mortgage.

1. Statutory and Contractual Requirements of Notice

Defendant Nutter's understanding that the Roundy Property was uninhabited as it had been condemned at the time it sent the Notice of Foreclosure, does not, on its own, equate to a violation of the statutory requirement set forth in Mass. Gen. Laws c. 244 § 14.[11]  "The law in Massachusetts is clear; the requirement that the notice be mailed to the owner of the relevant property 'is satisfied by mailing and *nonreceipt is irrelevant*.'" *In re Bailey,* 468 B.R. 464, 472-73 (Bankr. D. Mass. 2012) (quoting *Hull v. Attleboro Sav. Bank,* 33 Mass. App. Ct. 18, 23 (1992) (emphasis in original)). Nowhere in either the relevant statutes or the language of the reverse mortgage is it required that Defendant Nutter confirm Plaintiff's receipt of the Notice.  Further, Dooling's June 2011 letter (#37-5) was sent in response to a document that Defendant Nutter mailed to the Roundy Property, reflecting that less than four months prior to Defendant Nutter's October Notice, Plaintiff was receiving and responding to mail sent to the Roundy Property, even though he was residing at the Monument Square address.

Paragraph 16 of the reverse mortgage states, in relevant part, "[t]he notice shall be directed to the Property Address or any other address all Borrowers jointly designate." (#37-2 at 7 ¶ 16.)  The term "designate" implies that a change of the address on record from the Roundy Property to some other location must have been done by an overt action of the borrower. Plaintiff relies on an inference based on a single correspondence, and has failed sufficiently to demonstrate how communication from another address equates to a designation of said address as the appropriate address for notification.  Dooling has provided no other evidence to support his position.

---

[11]

Applying the facts alleged in the instant case to Mass. Gen. Laws c. 183 § 21, the Court is directed to Mass. Gen. Laws c. 244 § 14. *See* Mass. Gen. Laws c. 183 § 21.

In like manner to paragraph 16 of the reverse mortgage, section 21 of Mass. Gen. Laws c. 183 refers to the statutory Power of Sale provision that may be incorporated in any mortgage by reference, which addresses, in part, proper notice of foreclosure. *See* Mass. Gen. Laws c. 183 § 21. In the instant case, the Power of Sale provision was included in the reverse mortgage agreement. (*See* #37-2 at 8 ¶ 20.) Understanding that the Power of Sale applies and was exercised by Defendant Nutter, the Court must look to Mass. Gen. Laws c. 244 § 14 which states:

> The mortgagee. . . may, upon breach of condition and without action, perform all acts authorized or required by the power of sale; provided, however, that no sale under such power shall be effectual to foreclose a mortgage, unless, previous to such sale, notice of the sale has been published once in each of 3 successive weeks, the first publication of which shall be not less than 21 days before the day of sale, in a newspaper published in the city or town where the land lies or in a newspaper with general circulation in the city or town where the land lies and notice of the sale has been sent by registered mail to the owner or owners of record of the equity of redemption as of 30 days prior to the date of sale, said notice to be mailed by registered mail at least 14 days prior to the date of sale to said owner or owners to the address set forth in section 61 of chapter 185, if the land is then registered or, in the case of unregistered land, to the last address of the owner or owners of the equity of redemption appearing on the records of the holder of the mortgage, if any. . . .

Dooling does not take issue with Defendant Nutter's publication of notice for three consecutive weeks, the content of the Notice, or that the Notice was certified. (*See* #10.) Instead, he argues that, by mailing the Notice to the Roundy Property, Defendant Nutter failed to send notice to the "last address. . . appearing on the records of [Defendant Nutter]."[12] (#44 at 15.) It is Defendants' position that the Roundy address was the appropriate address for notification of foreclosure, as indicated by Plaintiff's letter stating that the Roundy Property was his permanent address. (#37-1 at 4-5; #37-5 at 3-4.)

---

[12] The Roundy Property is unregistered land, therefore this portion of the statute applies. (*See* #37-2 at 11.)

Dooling's reliance on non-statutory communication[13] and an inference that Defendant Nutter recorded the Monument Square address as his address in its records fails sufficiently to demonstrate a cause of action under the theory of statutory breach. Plaintiff explicitly stated, in a letter dated less than four months before the Notice was sent, that "32 Roundy Street is my primary residence although temporarily I am cared for at the [Monument Square address]." (#37-5 at 3.) Beyond his assertion that Defendant Nutter designated Monument Square as Plaintiff's address on record and a letter from Defendant Nutter, Plaintiff has provided no evidence that Defendant Nutter, in an action that would have been contrary to Plaintiff's stated wishes, recorded Monument Square as Plaintiff's address.

The statutory notice requirement was satisfied with Defendant Nutter's October Notice. Noteworthy is the date of the correspondence upon which Plaintiff relies to show Defendant Nutter's knowledge of the Monument Square address; the correspondence (#45-2 at 12) is dated February 2, 2012, four months after the October Notice was sent. *See id.*; (#37-4.) Dooling has presented no evidence of communication between the parties in the period between the June letter from Plaintiff (#37-5) and the October Notice sent to the Roundy Property. (#37-4.) Thus, at the time Defendant Nutter sent the Notice, the Roundy Property was clearly the last address on record.

2. Affidavit of Sale

---

[13] The document demonstrating Defendant Nutter's communication with Plaintiff about his reverse mortgage at the Monument Square address (#10 at 31) was not sent under a statutory requirement that the information be sent to the "last address of the owner [] of the equity of redemption appearing on the records of the holder of the mortgage," as is required for the notice of foreclosure. *See* Mass. Gen. Laws c. 244 § 14. Thus, the Notice shall be termed a "statutory communication" for the sake of this Report and Recommendation, whereas, any other communication between the parties, not explicitly guided by statute(s), shall not.

Dooling alleges that Defendant Nutter, through its agent Caleb Shureb, admitted its failure to comply with the Power of Sale provision of the reverse mortgage, as required by Mass. Gen. Laws c. 244 § 14, when he failed to check a box indicating he had done so on the Affidavit of Sale. (#37-6 at 3; #44 at 15-16.)  However, upon examination of the relevant section of the Affidavit of Sale,[14] it appears that Plaintiff misreads the document. The failure to check the box in question implies nothing more than Defendant Nutter's failure to notify the IRS of the sale, an issue that has not been raised by Dooling. (*See* #37-6 at 3.)

Upon review of all of the relevant documentation, there are no genuine issues of material fact with regard to the Notice of Foreclosure. Therefore, Plaintiff's claim of insufficient notice must fail.

## B. Violation of Mass. Gen. Laws c. 186 (Count II)

The amended complaint alleges violations of c. 186 generally with reference to § 4(h). (#10 ¶ 42.)  Section 4(h) does not exist under c. 186 and "§ 4," noted in the introduction of Plaintiff's amended complaint, addresses the liability of a tenant for rent for proportion of land in possession. (*See* #10 at 1); Mass. Gen. Laws c. 186 § 4.  In his opposition, Dooling references § 14 of c. 186, which deals with  "the interference with the quiet enjoyment of any residential premises or an attempt to regain possession of such premises by force without the benefit of judicial process." (#44 at 19.) Under § 14, Plaintiff argues that Defendant Fannie Mae violated his rights by executing a self-help eviction. *Id.*  However, Dooling fails to allege such a claim in his amended complaint and is barred from doing so at this stage. *See Neenan v. CitiMortgage, Inc.,* No. 13-cv-435-JD, 2013 WL

---

[14]  The relevant portion of the Affidavit of Sale reads: "I have also complied with Chapter 244, Section 14 of Massachusetts General Law, as amended, by mailing the required notice by certified mail, return receipt requested, ___ (if checked) I also gave the Internal Revenue Service notice by mailing Notice of Sale pursuant to Section 7425(c) of the Internal Revenue Code." (#37-6 at 3.)

6195579, at *4 (D. N.H. Nov. 26, 2013) ("Although [Plaintiff] argues a theory of impermissible self-help eviction in her objection to [defendant's] motion to dismiss, she did not allege that claim in her complaint. As a result, she has not alleged facts to support a claim of wrongful self-help eviction.") (internal citations omitted).

## C. Violation of Good Faith and Fair Dealing (Count III)

Count III alleges that Defendant Nutter acted in bad faith when it failed to provide money to Dooling to make the necessary repairs to bring the Roundy Property up to code. (#10 ¶ 46.)  In his Opposition, Dooling alleges that the duty of good faith was also breached when Defendant Nutter exercised the Power of Sale provision of the mortgage when it foreclosed on the Roundy Property.

> Under Massachusetts law, [e]very contract implies good faith and fair dealing between the parties to it. . . .[W]ith respect to mortgages, this requires, *inter alia*, that the mortgagee in exercising a power of sale in a mortgage must act in good faith and must use reasonable diligence to protect the interests of the mortgagor.

*Aragao v. Mortgage Electronic Registration System, Inc.*, 22 F. Supp.3d 133, 140-41 (D. Mass. 2014) (internal quotations omitted).

> A party may breach the covenant of good faith and fair dealing implicit in every contract without breaching any express term of that contract. *Marx v. Globe Newspaper Co., Inc.*, 13 Mass. L. Rep. 190, 10–11 (Mass. Super. 2001); *see Fortune v. National Cash Register Co.*, 373 Mass. 96, 101, 105 (1977).  Otherwise, the implied covenant would be a mere redundancy.  The essential inquiry is whether the challenged conduct conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall spirit of the bargain, not whether the defendant abided by the letter of the contract in the course of performance. *Marx*, 13 Mass. L. Rep. at 10–11; *Larson v. Larson*, 37 Mass.App.Ct. 106, 110 (1994).

*Speakman v. Allmerica Financial Life Ins.*, 367 F. Supp.2d 122, 132 (D. Mass. 2005).  There are limitations to a claim for breach of good faith and fair dealing: "Courts have cabined this obligation, however, and it may not be invoked to create rights and duties not otherwise provided for in the existing contractual relationship." *Aragao*, 22 F. Supp.3d at 141.

### 1. Provision of Funds

Plaintiff's interpretation of the parties' performance obligations overstates what is actually set forth in the contract.  Dooling alleges that, per the reverse mortgage, he was entitled to remain on the property for the remainder of his life and Defendant Nutter was to possess the property upon his death. (#10 ¶ 45.)  Dooling further alleges that Defendant Nutter breached the implied covenant of good faith and fair dealing when it "failed to timely provide him with the money he needed to prevent the house from falling into condemnation." (#10 ¶ 46.)

Plaintiff does not cite any specific contractual provision in the reverse mortgage or attached repair rider requiring Defendant Nutter to provide funding to bring the Roundy Property up to code. (*See* #10 ¶¶ 45-7.)  Nor does an independent examination of the documents reveal such a provision.[15] (*See* #37-2 at 2-11; #37-3 at 8.)  Given that a duty of good faith and fair dealing only applies to contractual obligations, and no such obligation exists in the context of Defendant Nutter's payment

---

[15]      The "Occupancy, Maintenance, and Protection of the Property" ("OMP") section of the mortgage and the Repair Rider are the only sections of the reverse mortgage that pertain to the maintenance of the property and Defendant Nutter's provision of funds for repair. (*See* #37-2 at 3 ¶ 4; 37-3 at 8.)  The OMP section does not address funds provided to the borrower.  Instead it states "[b]orrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate. . . ."  The Repair Rider declares that $18,000 from the initial Principal Limit under the Loan Agreement shall be set aside for the purpose of bringing the Property up to the property standards required by the Secretary. (*See* #37-3 at 8.)  Plaintiff stated, in his letter to Defendant Nutter, that he spent the $18,000 to make improvements to the Roundy Property. (*See* #37-5 at 5.)  Under the terms of the reverse mortgage, Plaintiff was not entitled to any additional funding to make repairs. Any money, other than the allotted monthly payments, provided by Defendant Nutter to Plaintiff would be considered a loan separate and apart from their contractual obligations under the reverse mortgage.

for maintenance of the Roundy Property, Plaintiff's claim regarding Defendant Nutter's failure to provide funding is without merit.

## 2. Exercise of the Power of Sale

Dooling argues that Defendant Nutter was under an obligation to act in good faith when it exercised its rights under the Power of Sale provision contained within the mortgage. (#44 at 14.) Plaintiff is correct that there is a good faith requirement in such a situation. *See Lo v. Federal Home Loan Mortg. Corp.*, No. 08-0822, 2011 WL 8008118, at *4 (Mass. Super. May 29, 2012) ("a mortgagee in executing a power of sale contained in a mortgage is bound to exercise good faith and put forth reasonable diligence. Failure in these particulars will invalidate the sale even though there be literal compliance with the terms of the power.") (quoting *Sandler v. Silk*, 292 Mass. 493, 496 (1935)).

> A mortgagee's duty of good faith and reasonable diligence in conducting the foreclosure sale is not to be confused with the contractual duty of good faith and fair dealing that is implied in every contract. The former is an independent duty that applies only to mortgagees exercising a power of sale.

*Shaw v. Bank of America, NA*, No. 10-cv-11021, 2015 WL 22466, at *7 n.6 (D. Mass. Jan. 15, 2015) (internal citation omitted).

> Under Massachusetts law, a mortgagee in exercising the power of sale in a mortgage must act in good faith and must use reasonable diligence to protect the interests of the mortgagor. This duty is satisfied if a mortgagor complies with the statutory foreclosure requirements, unless the mortgagee's conduct manifested fraud, bad faith, or the absence of reasonable diligence in the foreclosure sale process. The mortgagee's duty is more exacting when it becomes the buyer of the property, where he will be held to the strictest good faith and the utmost diligence for the protection of the rights of his principal.

*Shaw*, 2015 WL 22466, at 7 (internal citation omitted).  With an understanding that Defendant Nutter was obligated to act in good faith throughout the foreclosure proceedings, all of Defendant Nutter's relevant conduct must be examined.  This examination extends beyond basic contractual compliance, as Defendant Nutter was the purchaser of the Roundy Property.

There are two actions that merit analysis to determine if Defendant Nutter acted in bad faith.

### a. Notice

First, with regard to noticing of Dooling with respect to the imminent foreclosure of the Roundy Property, Defendant Nutter complied with the statutory requirements.  However, Defendant Nutter sent the Notice to an address it knew to be uninhabited, as it had been condemned.  While this would give pause if Defendant Nutter had no reasonable expectation that Dooling would receive such a communication, any concern is mitigated by the fact that Defendant Nutter received a response from the communication it sent to the Roundy Property after it had been abandoned.  This response reflects that Plaintiff was receiving mail sent to the Roundy property, despite its state of uninhabitability.

Dooling refers the Court to several cases he proffers under the theory that Defendant Nutter's practices with regard to the Notice constituted bad faith.  A review of Plaintiff's cases[16] reveals that Dooling stretches the good faith doctrine.  For example, the case of *Sandler v. Silk*, 292 Mass. 493 (1935) does require good faith beyond literal compliance with the power of sale.  In *Sandler*, the

---

[16]    Plaintiff cites several cases for the proposition that strict compliance with the power of sale agreement is a requirement for a valid foreclosure: *Eaton v. Fannie Mae*, 462 Mass. 569 (2012); *Bevilacqua v. Rodriguez*, 460 Mass. 762 (2011); *Bernhardt v. Atlantic Finance Corp.*, 311 Mass. 183 (1942); *Bead Portfolio, LLC v. Follayttar*, 47 Mass.App.Ct. 533 (1999); *146 Dundas Corp. v. Chemical Bank*, 400 Mass. 588, 593 (1987) (nothing more than a general requirement of good faith).  Because these cases do not pertain to the exercise of good faith, the Court will not address them, as they do not further Plaintiff's bad faith claim.

plaintiff had an attachment to the property in question; she informed the defendants that she intended to protect her interest by purchase and requested that she be notified of any foreclosure on the property. *Sandler*, 292 Mass. at 496.  The court determined that the defendants intended "to defeat the attachment of the plaintiff in the face of her undoubted right to have the power of sale exercised conscientiously and with due regard to her interests." *Id.* at 497.  The property was sold for less than half of its actual value. *Id.*  The court concluded that the defendants' complete disregard for the plaintiff's stated wishes, i.e., to be noticed of foreclosure, and the low sale price demonstrated bad faith on the part of the defendants. *Id.*

Applying the court's logic in *Sandler* to the case at bar, Defendant Nutter's actions fail to demonstrate bad faith.  Defendant Nutter complied with Dooling's stated wishes: that the Roundy Property be considered his permanent residence.  Further, there is no evidence that Defendant Nutter's actions with regard to the sale of the Roundy Property were done in an effort to circumvent Plaintiff's ability to exercise his rights.  Dooling told Defendant Nutter, in his June letter, that he did not have the money to pay for the necessary repairs to bring the property up to code, and even asked for assistance in the form of a loan from Defendant Nutter.  Understanding that Plaintiff was suffering financial hardship, Defendant Nutter had no incentive to not make Dooling aware of the imminent sale of the Roundy Property.  The Court finds that Defendant Nutter's actions are not comparable to those of the defendants in *Sandler*.[17]

In similar fashion, Dooling's other cited cases can be easily distinguished. *Moore v. Dick*, 187 Mass. 207 (1905) pertains to the execution of a power of sale agreement that required the defendant to post notice in "the Reporter Newspaper." *Moore*, 187 Mass. at 210.  The issue before

---

[17] The propriety of the sale price will be addressed in following section. *See infra*.

the court was that there were two different publications that were termed "the Reporter." *Id.* at 211. The court found that the publication in which the defendant posted notice was improper and, had the notice been posted in the other publication, there was a high probability that the plaintiffs would have been aware of the sale. *Id.* In conclusion, the court held that the defendant's failure to post notice in the appropriate publication was a failure strictly to comply with the terms of the power of sale. *Id.* at 212.

Dooling cites *Bottomly v. Kabachnick*, 13 Mass. App. Ct. 480 (1982) as well. *Bottomly* is in line with *Moore* and actually cites *Moore* for the proposition that strict compliance is a requirement for a valid execution of a power of sale. *See Bottomly*, 13 Mass. App. Ct. at 484. The *Bottomly* court found the notice of foreclosure to be fatally defective in its failure to identify the holder of the mortgage and the result was the invalidation of the sale as a matter of law. *Id* at 483-84. As stated above, Plaintiff does not take issue with the substance of Defendant Nutter's Notice.

The last case to be addressed is *Montague v. Dawes*, 96 Mass. 369 (1 Allen 1867). *Montague* stands for the proposition that when a mortgagor executes a foreclosure sale and ultimately purchases the property, it is held to the strictest good faith and the utmost diligence for the protection of the principal. *Montague*, 96 Mass. at 373. The *Montague* court noted that the defendant conveyed title of the property to a third party to execute the foreclosure without any payment being made for the transfer, that the sale was in a remote location, far from the property itself, and that the published notice contained meager information. *Id.* at 374. Defendant Nutter's actions were not comparable to those of the defendant in *Montague*. As demonstrated by *Montague,* as well as Plaintiff's other cited cases, proof of a breach of good faith requires more than mere assertions and unrealistic expectations.

16

The facts here are more like those in *Shaw*, where the defendant foreclosed and subsequently purchased the property at the foreclosure sale.  Summary judgment was allowed on a claim for breach of good faith and fair dealing when the court found that the defendant complied with the statutorily required notice under Mass. Gen. Laws c. 244 § 14. *See Shaw*, No. 10-cv-11021, 2015 WL 22466, at *8 ("The remaining bases for Shaw's claim for breach of the obligation of good faith and fair dealing are lack of statutorily required notice and the postponement and rescission of the foreclosure sale. The unrebutted record before the Court indicates that [the defendant] provided notice as required by Mass. Gen. Laws c. 244, § 14. The Court, therefore, allows [the defendant's] motion for summary judgment. . . .").

### b. Sale Price

The second issue is the price Defendant Nutter paid for the property. The purchase price of $180,000.00 was substantially less than its appraised value in 2008.[18] However, it is well established that "[u]nder Massachusetts law, absent evidence of bad faith or improper conduct. . . mere inadequacy of price will not invalidate a sale unless it is *so gross* as to indicate bad faith or lack of reasonable diligence." *States Resources Corp. v. The Architecture Team, Inc.*, 433 F.3d 73, 81 (2005) (collecting cases).  In this case, four years had passed between the time of the appraisal and the foreclosure.  The property was condemned for three of those years.  It is reasonable to infer that these circumstances had an impact on the appraised value.

In any event, Defendant Nutter's purchase of the Roundy Property at the foreclosure sale for approximately half of its previously appraised value does not rise to the level of bad faith or lack of

---

[18] The parties disagree on the appraised value in 2008: Plaintiff states that it was $376,000 and Defendant claims it was $359,000. (*See* #10 ¶6; #8 ¶6.)  The $17,000 discrepancy is immaterial, as either amount is substantially more than the 2012 foreclosure sale price of $180,000.

reasonable diligence. *See Federal Deposit Insurance Corp. v Elder Care Services, Inc.*, 82 F.3d 524, 528 (1st Cir. 1996) (disparity between estimated liquidation price of $2,000,000 and later sales price of $300,000 not so gross as to withstand summary judgment motion); *Resolution Trust Corp. v. Carr*, 13 F.3d 425, 430 (1st Cir. 1993) (disparity between appraisal price of $350,000 and sales price of $195,000 not enough to withstand a summary judgment motion); *Fairhaven Savings Bank v. Callahan*, 391 Mass. 1011, 1011 (1984) (purchase price of $10,000 on property securing a $40,000 debt not so inadequate as to constitute a breach of fiduciary duty as a matter of law); *Sher v. South Shore Nat'l Bank*, 360 Mass. 400, 401 (1971) (disparity between alleged fair market value of $52,500 and sales price of $35,500 not so gross as to withstand a motion to dismiss); *Cambridge Sav. Bank v. Cronin*, 289 Mass. 379, 381(1936) (disparity between alleged fair market value of $51,000 and sales price of $20,000 warranted directed verdict against the challenger of the sale).

Establishing a breach of implied good faith is a substantial hurdle:

> In order to prevail, the plaintiff must present evidence of bad faith or an absence of good faith. Lack of good faith carries an implication of a dishonest purpose, conscious doing of wrong, or breach of duty through motive of self-interest or ill will. Evidence that a party behaved in a manner unreasonable under all the circumstances may indicate a lack of good faith, but the core question remains whether the alleged conduct was motivated by a desire to gain an unfair advantage, or otherwise had the effect of injuring the other party's rights to the fruits of the contract.

*Young v. Wells Fargo*, 717 F.3d 224, 238 (1st Cir. 2013). The high threshold for such a claim is evidenced in one of Dooling's cited cases: *Hull v. Attleboro Sav. Bank*, 25 Mass.App.Ct. 960 (1988). In *Hull*, the court found:

> (a) that after the bank took possession of the property, it refused to allow the plaintiff onto the premises; (b) that the bank hired an armed security guard to protect the property twenty-four hours a day; (c)

that the bank failed to repair a broken glass door, to cut the grass, and to clean the inside of the house; (d) that the bank should have advertised the property more vigorously prior to its sale; and (e) that the defendant purchased the property from the bank for $125,000 and sold it to the other defendants for $170,000.

*Hull*, 25 Mass. App. Ct. at 962-63. The *Hull* court held that these actions did not rise to the level of a breach of good faith. *See id.* at 963 ("These facts are not sufficient to create a factual question upon which reasonable minds could differ relative to the reasonableness of the bank's conduct in regard to the foreclosure sale. There was no error in allowing the defendants' motions on this claim.").

Based on this case law, Defendant Nutter's notice to Dooling and the price at which the Roundy Property was sold fail to raise genuine issues of material fact on Plaintiff's claim for breach of good faith. Defendant Nutter is entitled to judgment in its favor.

### D. Fraud and Negligent Misrepresentation (Counts IV and V)

Dooling alleges Counts IV and V under the same factual scenario: He relied on a representation made by a Mr. Madden, alleged to be an employee and agent of Defendant Nutter, that Defendant Nutter would not foreclose on the Roundy Property until September 1, 2012. (#10 ¶¶ 18, 49.)

Plaintiff fails to provide any evidence to demonstrate that this conversation took place, much less its content, and Defendant Nutter has denied its existence. (#8 ¶¶ 18, 49-57.) While a party's testimony is evidence and Dooling has submitted an affidavit on his own behalf (#10 at 28), no mention is made in that affidavit of any verbal promise given by Defendant Nutter or any of its agents. *(See* #10 at 28-9.) Without evidentiary support, Plaintiff's conclusory assertions regarding Defendant Nutter's alleged promises fail to demonstrate a genuine issue of material fact. *See*

*Fontánez-Núñez*, 447 F.3d at 54-55.

> E. Intentional Infliction of Emotional Distress ("IIED") (Count VI)

Dooling alleges that Defendants' actions of foreclosing on the Roundy Property, despite promising otherwise, and discarding all of Plaintiff's possessions were "extreme and outrageous." (#10 ¶¶ 66-7.)  Additionally, Plaintiff alleges that Defendants knew that their actions were wrong, and, as a result of the loss of his property, he suffered severe shock and was hospitalized. (#10 ¶¶ 30, 59-67.)

> In order to establish a claim for the intentional infliction of emotional distress under Massachusetts law, it is incumbent upon the plaintiff to prove: (1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it. *Limone v. United States*, 579 F.3d 79, 94 (1st Cir. 2009) (quoting *Agis v. Howard Johnson*, Co., 371 Mass. 140, 144–145, 355 N.E.2d 315, 318–19 (1976)); *Young*, 717 F.3d at 240.

> 'Extreme and outrageous conduct is behavior that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' *Young*, 717 F.3d at 240 (internal citations and quotation marks omitted). Severe emotional distress means more than 'mere "emotional responses including anger, sadness, anxiety, and distress," which, though "blameworthy," are "often not legally compensable."' *Kennedy v. Town of Billerica*, 617 F.3d 520, 530 (1st Cir. 2013) (quoting *Quinn v. Walsh*, 49 Mass. App. Ct. 696, 732 N.E.2d 330, 338 (2000)).

*Lund v. Henderson*, 22 F.Supp.3d 94, 105-06 (D. Mass. 2014).  Dooling fails to make a *prima facie* showing for his IIED claim.  Beyond the conclusory assertions stated in the amended complaint, he

has not demonstrated that either defendant intended to inflict, or should have known that their actions would cause, emotional distress.

Defendant Nutter properly notified Plaintiff under the statutory and mortgage requirements, and there is no evidence to support Plaintiff's allegation of promises not to foreclose. Thus, the action of foreclosing on Dooling's property was proper and would not lead a reasonable person to conclude that it would cause extreme emotional distress. With regard to Defendant Fannie Mae's actions in discarding Plaintiff's possessions, Defendant Fannie Mae was in legal possession of the property at the time, and as such had the right to remove Plaintiff's possessions as they were assumed to have been abandoned. (*See* #37-7.) There is no evidence to show how any of Defendants' actions were extreme and outrageous as is required to make out a claim for IIED.

Dooling also fails to demonstrate how the actions of either defendant were the cause of his emotional distress, i.e., the heart attack. While Dooling, in his affidavit, references a heart attack he suffered, he does not attribute his heart attack to the actions of either Defendant. (*See* #10 at 28-9.) The other documented medical issue appears in Plaintiff's letter to Defendant Nutter wherein Plaintiff states that he suffered a heart attack as a result of the city of Beverly's decision to condemn the Roundy Property. (*See* #37-5 at 4-5.) With the failure to make out a *prima facie* case for his IIED allegations, Plaintiff's claim must fail.

## F. Violation of Mass. Gen. Laws c. 93A (Count VII)[19]

Mass. Gen. Laws c. 93A makes unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce unlawful. *See* Mass. Gen. Laws c. 93A § 2(a). Dooling makes several allegations that Defendants violated this statute: 1) The actions alleged in

---

[19] Plaintiff incorrectly labels Counts VI and VII as Count VI. (*See* #10 at 10.) The Court will address Plaintiff's 93A claim as Count VII.

the complaint generally amount to unfair and deceptive practices; 2) Defendant Nutter engaged in table funding;[20] 3) Defendant Nutter knew, or should have known, that Plaintiff could not afford a reverse mortgage; and 4) Defendant Nutter failed to provide Plaintiff with the "Right to Cure" notice required by Mass. Gen. Laws c. 244 § 35A. (#10 ¶¶ 74-8.)

Allegations 1) and 2) are conclusory assertions and Dooling has failed to provide sufficient evidence in support of either allegation. Defendants' actions in foreclosing on the Roundy Property and discarding Plaintiff's belongings were legal. Plaintiff's reference to table funding in Count VII is the first in the entire amended complaint, and a bare allegation is not enough. Dooling has provided no evidence of a third party that actually funded the reverse mortgage, and fails to even address a potential source of the funds for the mortgage beyond Defendant Nutter. (*See* #10.)

Plaintiff's assertion that Defendant Nutter "should have known that Plaintiff could not afford a reverse mortgage," without any allegation of a statutory violation or a failure of due diligence on the part of Defendant Nutter, fails to state a cause of action. Dooling's opinion as to what he believes would have been an appropriate course of action by Defendant Nutter does not equate to unfair and deceptive practices, and Dooling provides no case law to demonstrate otherwise. Further, Plaintiff has not alleged that Defendant Nutter mislead, or in any way wrongfully induced him, to enter into the reverse mortgage. At no point in the amended complaint was Dooling's capacity to enter into the reverse mortgage agreement called into question. Based on the record before the Court, there is no issue of material fact as to Dooling's third allegation.

With regard to the fourth allegation, i.e., that Defendant Nutter failed to provide notice of a right to cure, Defendants argue that the notice requirement pertaining to a potential right to cure

---

[20] Table funding occurs when a loan is actually funded through a third party, but the mortgagor identifies itself as the creditor. *Reagan v. Racal Mortg., Inc.*, 135 F.3d 37 (1st Cir. 1998).

under Mass. Gen. Laws c. 244 § 35A is inapplicable in the case of a reverse mortgage.  Defendants refer the Court to subsection (b) of § 35A, which Defendants characterize as only applicable to mortgages where the borrower is making payments on the loan. (#37-1 at 6-7.)  As a result of a recent Supreme Judicial Court of Massachusetts decision, it is unnecessary to address the applicability of § 35A to a reverse mortgage. The Supreme Judicial Court addressed the right to cure notice requirement as it applies to a traditional mortgage.  The court held ". . . [M.]G.L. c. 244, § 35A, is not one of the statutes relating to the foreclosure of mortgages by the exercise of a power of sale." *U.S. Bank National Association v. Shumacher*, 467 Mass. 421, 431 (2014).  Defendant Nutter foreclosed on the Roundy Property by exercising the Power of Sale provision in the reverse mortgage agreement.  As stated by the Supreme Judicial Court, the statutory requirement under § 35A is not a prerequisite to foreclosure when a lender is exercising its rights under a Power of Sale provision.  Therefore, the Court's review of notice of a right to cure in such a situation is limited to fundamental fairness. *See Shumacher*, 467 Mass at 433 (Gants, C.J., concurring).  Plaintiff concedes as much in his opposition. (#44 at 18.)

In support of their position that Dooling's notice of right to cure argument is misguided, Defendants note Plaintiff's breach of the reverse mortgage and the resulting infeasibility of curing the breach. (#37-1 at 6.)  One of Plaintiff's contractual obligations under the reverse mortgage was a requirement of occupancy. (*See* #37-2 at 3 ¶ 4.)  When the city of Beverly condemned the Roundy Property on June 9, 2009, Dooling was in violation of the occupancy requirement, as no one was allowed to reside in the residence until it was brought up to code. (#10 ¶ 13; #37-5 at 4; 37-10.)  Throughout the foreclosure proceeding, the Roundy Property was condemned.  Thus, Dooling could not have cured his occupancy violation even if he was physically able to return to the Property until it had been brought up to code.

Plaintiff's fourth allegation must fail both because Defendants' actions were not fundamentally unfair in that they abided by the requisite statutory and contractual provisions, and in light of the substantial amount of time Plaintiff was in breach of the contract, three years at the date of foreclosure.

V. <u>Conclusion</u>

For the above reasons, it is ORDERED that Defendants' Motion For Summary Judgment (#37) be, and the same hereby is, ALLOWED.  Judgment shall enter for the defendants.


/s / M. Page Kelley
M. Page Kelley

October 15, 2015                           United States Magistrate Judge